2013-14-60, and we'll hear from Mr. Scott when we're ready. We have them all right in front of us. And, as often happens, they extend below our line of vision. Please, the court. Teddy Scott and my colleague, Mark Deming, from the Pulsanelli Law Firm, on behalf of Isaac Bentwich, the inventor and also the owner of the application in question, Rosetta Genomics.  We have a couple of claim construction issues. One, which is important to the inquiry that was before the board, a prior art rejection based on the Wang reference. And the second is one that's raised based on the request that we consider be prepared to discuss Comiskey with regards to patent-eligible subject matter. With regards to the prior art rejection, it's a very simple issue, and that is whether or not the claimed nucleic acid is found in a second nucleic acid. Why don't you address the second issue first? Certainly, sir. The 101 issue. Sir, there's no doubt, and we're not here to argue, that there are certain claims that are affected by myriad. In particular, Representative Claim 21, which is representative before the board for the prior art rejection. We do not have any arguments that that would be affected adversely by myriad. To be sure about that, what do we mean when you are claiming the first viral nucleic acid or complement thereof? Is the complement a synthetic? It could be a synthetic, but it would also... I didn't see anything in the specification. I looked at... Claim 21 was added by amendment. Yes, sir. And I didn't see any discussion anywhere, and the spec was amended in the light of that. I didn't see anything about what complement meant. Well, the claim is directed to a single-strand nucleic acid, and so the complement would just be the other strand. So, with regards to a DNA sequence, the claimed nucleic acid could be one strand of the DNA... It exists in nature as well? It could exist in nature. We don't dispute that. Okay, fine. I was just asking because there's a difference, as you know, in myriad between the synthetics. Correct. But that's not what you're talking about. No, that's not what I'm talking about. I definitely agree with you that with regards to the synthetics, if you turn to... It was not before the board at the time because the appeal was filed prior to myriad. If you look at claims 33, 34, 47, and 48, those we would argue there's no dispute that those are synthetic, made by man, do not exist in nature under any circumstances. There's no question that there's not only... Is 33 and 34 the probe? 33 and 47 are the probe. 34 and 48 are the vector. And so not only is there a difference between what exists in nature, but more importantly, the function of them is completely different. For a probe, a probe, importantly, is modified somehow so that you can detect it, you can see it. If it's a nucleic acid that's not a probe, it would hybridize just like it would in nature, to the compliment that you were raising just a second ago. But once it's modified, it's now a probe. Now, not only does it bind... Right, but you're not basically challenging that claim 21 is invalid under myriad? No, sir. Not challenging that at all. Okay. But with strong... So, under NRAPE Comiskey, wouldn't the right thing for us to do is to say as much as that, that claim 21 is invalid, and remand the case to the board for further proceedings to see if there's anything left in your claim that passes muster? I think there's two important points to that. Number one, I think as a matter of law, there's no need to go back to the patent office to determine whether or not a probe or a vector is eligible subject matter. Well, we don't know. They were found to be obvious below? They were represented... On the appeal here, everything rises and falls on 21. 21 representative, you didn't separately argue 33, 34. Yeah, we never had that opportunity, that's right. But in terms of... Of course you had the opportunity on appeal here if you wanted to, and below. 21 was treated as representative, was it not? It was treated as representative for purposes of the prior art rejection by Wang. And what we would argue that under Wang is that they're not anticipated. We don't dispute that 21 is invalid under Miriam. But the whole anticipation issue turns on the claim construction, doesn't it? Yes, sir. The board held that 21B is not a limitation. Correct. Period. And as I read the director here, they're agreeing with that. So if 21B is not a claim limitation, then Wang teaches 21A, right? Correct. If 21B is read out of the claim. That means that Wang anticipates. If 21B is read out of the claim. That's right. That's right. So the whole question is whether or not 21B is a claim limitation, and you essentially are arguing orthokinetics, correct? We're arguing... It's not claimed. I mean, 21B is not claimed. It's a limitation. It is a limitation that is properly... But it is not claimed as such. The claim is to 21, is to the isolated first viral nucleic acid, which is then defined as one that consists of 15 to 24 nucleotides. That's correct. B further limits without B. But, I mean, your whole argument below as to why the examiner was wrong on the indefinite rejection was based on orthokinetics, correct? I believe so. I know it was because that's what you said, and the board agreed with you. The board said for an indefinite rejection, unclaimed subject matter can be useful when read through the eyes of the specification to tell you whether or not your claim that you're claiming is definite, right? Yes, sir. So on appeal, you won on that point, but the board did not take the next step to say orthokinetics teaches me that B has to be a claim limitation. For anticipation purposes or perhaps infringement, if you were in the district court. We read the case that it is proper to use that as a limitation of the claim. If it's a limitation of the claim, it's wrong. There's no case from this court that would support... It would be brand new law if we said that. We looked high and low. I couldn't find a case in our court that takes the orthokinetics reasoning and morphs it onto claim construction for purposes of either 102 or infringement would be the same. I think we would argue that that is... But there's no case. That would be a narrow application. This would be the first case. For a broader application, yes. And so we would be saying, in essence, that in order to prove anticipation of this claim, you would have to find in the prior unclaimed subject matter. I believe what we're saying is basically... That's correct. The law would be that that is a limitation for all purposes. As I'm saying, there's no case that says that. This would be a major step forward or backwards, depending on how you look at it. Okay. I'm into my rebuttal time. I'll save the rest. You did want to save eight minutes, which is unusual, but it's up to you. Go ahead. I'll go into my rebuttal time. No, I'm not asking a question. I don't want to interrupt you. Go ahead. I'm presiding. I'm sorry. Go ahead. Judge Rainer has a question. So you've acknowledged that Claim 21 is invalid, correct? Yes, sir. All right. Doesn't that leave the other claims, 33 and 34, that were pending, and the board asked to send them back to the examiner, and those claims are still pending, correct? Yes, they would still be pending. I mean, unless we would ask that you hold that the claims are valid under 101 and also that the board's... Which hasn't been briefed. Correct. We believe as a matter of law that it's a clear... Hovering omnipresence of validity, right? That's hard to do that. And yet, I mean, the other thing that's important for the applicant here is to resolve these prior art issues. We don't dispute that the 101 issue is paramount. Correct. You still have the opportunity to make revisions to the application that could possibly save a patent. Correct. Correct. And we recognize that. But most importantly, this has been going... There's been a number of back and forths with the patent officer. The prior art has been whittled down to a single rejection, which we believe is very simple, relatively simple, to deal with and dispose of the case as well in the claims. And so we ask that the court rule on that decision as well. We'll save you rebuttal time. Okay. Thank you, sir. Ms. Rashid. Could I ask you a question on the claims instruction? Sure. It was clear to me that the board was of the view that B is not a limitation of the claim. Do you agree with me on that? Not necessarily, Your Honor. I think our understanding of the board's decision is that B is... You have the board's decision there? Yes, Your Honor. Could you speak up a little bit, counsel? Absolutely. And on the rehearing, page 5, first whole paragraph, the board says as a matter of claim interpretation, the only physical structure required by Claim 21 is the first viral nucleic acid. This is on the rehearing. On page 5, you said? Page 5. Okay. But then the board goes on to say, Your Honor... Excuse me? The board then goes on to say that... The board says that. So there's only one limitation, right? The board says that what's relevant, what's being claimed here is the first viral nucleic acid, which is 15 to 24 nucleotides long. But the way this claim is written, it's written in terms of its location within a larger sequence, which is within a genome. And so it is limited by its location within the genome. I hear you talking, but I don't... Do you agree with the board that there's only one limitation? We don't believe that that's what the board says. The board said something other than what it said. We believe that the board says that the other limitations with regards to the second viral nucleic acid... Don't call them limitations, right? They're called relational constraints. What's a relational constraint? Can you cite me a case in which we have defined what a relational constraint is? Apparently you know our body of law. I can't point you to a case necessarily that talks about relational constraints, but the board did... What is a relational constraint? Here, the relational constraint is that... What is it? Is it a claim limitation? I believe so. It is a limitation that restricts the location. Why is it a claim limitation? You're just saying this and you're not making any sense to me. I believe the board understood it to be a limitation because it limits location. Understood it to be a limitation? Yes. Where do they tell me that? When they tell me that as a matter of claim interpretation,  and when you're talking about anticipating a claim, and you're looking for the claim structure in the prior art, aren't you? That's correct. Right. And Wang does not teach. Wang teaches exactly the first viral nucleic acid, right? It does. Wang teaches the first viral nucleic acid, but it also teaches the location of that first viral nucleic acid. Sure, it happens along the graph. You find it on H, right? That's correct. And it's AS3. It just happens to have been there, right? But what does that teach you elsewise about it, the fact that it's there? It doesn't teach you that it grew out of a longer strand, right? It tells you the location of it within the genome. And the way that this claim is written, it's written as a genesis-type claim, which shows you the source of origin of the claimed first viral nucleic acid. If you look at your brief on page 28 on this claim construction issue, it seemed to me that the... that you're not saying that the B is a claim limitation. What we're saying there, Your Honor, is that the B is a claim limitation. And that the second viral nucleic acid has to contain, has to encompass the first viral nucleic acid. Why? And it's only a limitation in the sense that it has to be, the first has to be included within the second. Well, now, the way the claim was originally written, correct, then the second was a precursor, correct? That's correct. And it was claimed as such. That's correct. And the claim was amended. So wouldn't you believe that the second is no longer a precursor when the claim was amended? Yes, and we do say that in our brief. So it's not a precursor? It is not a precursor. But what's remaining... But it's somehow claimed. It's claimed as something other than a precursor. It's claimed as something that can be found, that can be located in a specific area within a virus genome. And that's the additional limitations that the board... It can be found, but it must not, for anticipation purposes, it doesn't have to be. Because your anticipatory reference doesn't line up exactly with the claim language of B and C, right? You have to modify where the acids are. I don't necessarily think so, Your Honor. I think we do... Wang does read on the claim the way it is written. The claim isn't written to require the starting point and the ending point of the second boron nucleic acid to be in a particular... to be the beginning and end point of the hairpin. The claim is broad enough to say that all that is required is that the first has to be encompassed within the second. And that's evident in B, where we have the term comprised, correct? I mean, it seems to me that the way the claim is written, it covers the first acid, but yet requires that that acid be included in the second. That's correct. Is Wang an enabling disclosure? Does Wang enable everything that's required in 21B and C? It does in the sense that if B and C require A to be part of something longer, then yes. The genome shows that AS3 is within a nucleotide sequence that is longer than AS3, which is within 50 to 131 nucleotides. The entire genome, Wang discloses 7,399 nucleotides. It clearly includes something. Well, how do we know that AS3... How do we know, in Wang, that it grew out of a second viral nucleotide of 50 to 31 nucleotides? We don't need to know whether it grew out of it or not because the claim is not a... Because that's not a limitation. No, because it doesn't require to recite precursors. What it does still recite is the location of the first viral nucleic acid within a stem segment of a hairpin loop found within a larger nucleic acid sequence within a virus genome. And that's the limitation that the board considered here. But where... Even if it's not a precursor, where does Wang enable the second viral nucleic acid consisting of 50 to 31 nucleotides that comprises the first one? The first is AS3, right? That's correct. Okay.  All step B says is that the first has to be within a sequence range of 50 to 131 nucleotides. So all we really need is a... Is it within a sequence range of 50 to 131 on that chart? I believe so, Your Honor, because AS3, if you look at this chart, is found in the iris region, which the board identified as the region containing the second viral nucleic acid. And that is 200 nucleotides long. So if that's 200 nucleotides long, it would contain something that's 50 to 131 within it. The claim doesn't require the second viral nucleic acid to be isolated from the genome. It could be embedded within the genome. That's sufficient. And so you all... You agree with the applicant here that claim 21 is invalid under Myriad? We do agree with them, and that kind of leaves us in a very awkward situation here. You know, 10 minutes ago, if you had asked me 10 minutes ago, I would have said that there was a... Well, what does Ingrid Kornesky say we're supposed to do? Well... Why didn't you cite that in your brief? We didn't... We didn't cite Kominsky. We wanted to alert the court to the fact that there was this... Right, but what does Ingrid Kominsky say we're supposed to do? Under Ingrid Kominsky, this court has the ability to dispose of this case on one-on-one grounds, even if that wasn't addressed... And remand the case? Isn't that what happened in Ingrid Kominsky? I believe that's... Yes, that is what happened in Kominsky. But I don't think Kominsky prevents this court from also addressing the 102 issue here. Well, Kominsky didn't address the 103, right? It didn't. Kominsky was a 103 rejection, I believe. That's correct, Your Honor. And this court didn't even touch it, just sent it back. That's correct. Nothing prevents this court from addressing the 102 issue here. Kominsky doesn't say that the 101 issue is the end-all. I mean, it is an alternative rejection, and that's what we would ask or urge this court to also address, the 102 issue. But the awkward situation that I was talking about here is that the only issue that's before this court is Claim 21. Ten minutes ago, I would have said there was a dispute between the parties with regards to whether or not Claim 21 is patent-eligible. But now that a bench counsel has conceded that point... Isn't 21 on appeal representational of all the claims? It is not representational. You say it is in your brief. We did say that. You didn't really mean that? We did say that when we were talking about the 101 issue. And all we were trying to do there was to show that there was a distinction between the prior art issue and the 101 issue as far as the representative claim is concerned. So what I mean by that is... For the 102, you meant. 102, I'm sorry. 102. Right. So while some claims might stand or fall with Claim 21, with regards to the prior art 102 issue, that may not mean the same thing. So why isn't the best thing for us to do is to address what both parties tell us is the case, which is Claim 21 is invalid, and remand the case and let the Patent Office sort out what's left on the table. The Court is very well within its discretion to do that. I mean, we haven't... All these sub-issues haven't been briefed to us. Well, what has been fully briefed to this Court is the 102 issue. And the Court can reach that issue here in addition to the 101 issue. Well, that moves the line. If we reach... Would you like us to reach the 102 issue in reverse? No. Well, if you don't agree with us, then, you know, we'll take the 101 and, you know, we'll go back to the office and re-evaluate what's left. But I think you should agree with us on the 102 issue. Because if you look at how Benwich himself described the claim... As you heard from my original conversation with you, I'm having trouble with the claim construction issue because it sure looks to me like the Board said there's only one limitation in this claim that you need to worry about, and that is A, 21A. I don't believe that that's what the Board was saying, Your Honor. I think what the Board was saying was that... Because if you look at the Board's initial decision and the decision... They say Wang's asset has the capabilities recited in C. Right. It doesn't say anything about B. Well, B is pretty much... B tells you all the limitations of the hairpin where you find the AS3 within the hairpin, that is, the stem segment within the hairpin, what the level of complementarity is between that. So in essence, it's also kind of defining what B is. Right. The issue seems to be more complicated to me because of the fact that you're saying, oh, well, you know, B is not a precursor, but it's something that's very important. And it's something that's not claimed, but, yes, it is claimed. And I don't have any case law that helps me to understand how to read a claim like this. We agree with you that there's no case law on that point, but there's no case law the other way around. This is an interesting case. Can you think of a case that presents this kind of claim construction issue? It doesn't because this claim is so confusingly written, right? This is a genesis-type claim that we don't normally see where what is being claimed is based on where this nucleic acid could be found within a genome. We don't normally see claims written that way. I mean, there are other issues with the claim perhaps, but maybe that's why we haven't seen any case law with regards to this type of claim construction. But the only issue in terms of claim construction here is what does consisting of mean? Does consisting of additionally require the second viral nucleic acid to be isolated? They've already conceded that the precursor is not a limitation. So all we're left with is whether or not consisting of additionally requires it to be isolated. The claim doesn't require the second viral nucleic acid to be isolated. In addition to that, the fact that it's not even a patentable distinction there, right? What are they getting out of isolating it? Is the office getting many claims of this sort these days? You know, we have repeat players that do file claims like this. We have seen them here and maybe perhaps we saw something similar like this in the Roslin case that was before this court a couple of months ago. Claim to a material and then stating that it's within a certain environment. That's right. And here it's even broader than that, right? It's a claim to a nucleic acid that is found within, it's basically a source claim, which just tells you where you can find it, where it's, you know, how to identify it. The claim invention here is not the process of isolating these things. If there is any invention here at all, the invention is to a computer program that can scan genomic DNA, look for these types of hairpins within the sequence. Clearly that doesn't require it to be isolated for the computer to run that type of analysis and then determine within, once it finds the hairpin, well, within there, is there this 20 nucleotide long segment within one of the hairpin loop stem segments and then look to functionality after that. I mean, that's what's being claimed as the invention here. So whether or not it's isolated or not doesn't even matter to the claimed invention and nor is it recited in the claim for it to be isolated. So I think... But the claim starts off in isolated first viral nucleic acid. That's correct. Isolated. The first is, we don't disagree that the first is isolated. We disagree that the second is required to be isolated. But I thought the limitations, A, B, and C, were telling you how you do the isolation. I think original claim one was about the process of how you do the isolation. When rewritten, it's really more about how you find it, which is different than isolating it. Thank you, Ms. Rashid. Ms. Scott has some rebuttal time. Thank you. Just a couple of points I wanted to address. Getting back to some of our previous discussion and also following up there is looking for case law where you can look at this element B. And I think it's important. There's another element in this claim that no one's questioning. It's being read. It's being accepted. And it appears in many, many patents. And it's being dealt with all the time. And that limitation is what separates this from being a synthetic, non-naturally occurring nucleic acid. There's no doubt if this was a non-natural... If you had some sequence of this nucleic acid, and you couldn't find it anywhere, that would be a non-naturally occurring sequence. There's actually language in this claim that says the sequence is naturally occurring. And that is in the last where in clause. Where in a viral genome comprises the sequence of the first nucleic acid. This is no different than is used many, many times in claim language where a nucleic acid or even a protein is referenced to its source. It might say a viral nucleic acid. That's in the preamble of the claim. This is a viral nucleic acid. Without viral, without that last where in clause, it could be any nucleic acid that has these other properties. But those limitations require it to be found in the genome, in a viral genome, with reference to something. You read that. Everyone reads that. The board read that. We all read that. We know what that means. I have this small nucleic acid, and I can find it somewhere else. And what we're saying with element B, it's the same thing. This small nucleic acid that you have, you want to know if it's in the scope of the claim, just like it must be in the genome. It must also be found in the second nucleic acid. That's one point. The other point is it's something that's come up in the briefs a couple times, and it came up just a minute ago in this discussion of a precursor language. This claim never used the words precursor. If you look at the claims, the history of them, claims 1 through 20 were the only ones that were originally filed that had precursor. The subject matter of those claims was to the genes in the genome. The new claims that are pending are to claims on this, what was referred to sometimes as a second nucleic acid, and the claims that issue that are pending are to this nucleic acid. The word precursor is never used in those claims, ever in the history of the prosecution. I raise that just because it can be confusing at times. And then lastly, to the issue of Enrique Comiskey, how to handle this case. I believe as a matter of law, you can deal with this case under 101. Has there been briefing on it? No, there hasn't been briefing. But as a matter of law, you can deal with this, and the probe claims and the vector claims, everyone knows what those are. Those have been modified by man. They've been modified in a way that allows them to be used in a way completely, completely different than the way the nucleic acids are used in nature. Detection as a probe, and for propagation or transmission with the vector. I don't believe there's any other conclusion that can be reached. Have they been modified as cDNA was in myriad? Yes, cDNA is generated in the lab. It does not exist in nature. A probe does not exist in nature. It's been modified by man. A vector for propagating the nucleic acid, it does not exist in nature. It's made by man. And so we would ask that the court issue it. It's been modified how, by chopping off part of it? To make a probe, it's modified by you label it somehow. Because if you don't label it, it may bind in its natural way in nature. Do we have those claims in the record here, 33, 34? Yes, sir. Claims 33 and 47 are to a probe comprising the nucleic acid. Claims 34 and 48 are to a vector comprising the nucleic acid. Are those claims pending before the examiner? Yes. A vector, which is a structure, correct? It is a nucleic acid that has a couple of features to it. And this is well understood. And anyone in skill in the art would read the claim and understand it to be, it has an origin of replication so it can make multiple copies. Comprising something that's naturally occurring. I'm sorry, yes. Comprising something that's naturally occurring. Yes, they have, they will have an insertion. But you're not altering what's naturally occurring. I'm sorry? You're not altering the, it's basically a vector that's tacked on to claim 21. Correct. Or a probe is tacked on. And in doing so gives it completely and very important different features and functions that exist in nature. But they're not really very definite in the claims. And it's not for us to examine them for indefiniteness. I think they are definite, isn't it? Or breadth. Just one of skill knows what a vector is. One of skill knows what it is. Right. But it needs to be defined. If they have to be assessed, 103, 102, 112. They can be dealt with. Thus far, how did they get swept under the 102 rug? They got swept at the time, it was actually improper. They should have been as a 103 by the board as well. But in terms of, if 21 falls under 102. And they're still exposed to 103. They would fall. If 21 falls under 102, the vector and probe claims would fall under 103. We don't argue that. And so that's why we think it's important to address the 102 rejection. Thank you. Thank you, Mr. Scott. We'll take the case under revising.